Filed 12/4/14  P. v. Cortes CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E059215 |
| v. | (Super.Ct.No. RIF1104561) |
| NOE IVAN CORTES, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  W. Charles Morgan, Judge.  (Retired judge of the Riverside Super. Ct., assigned by the Chief Justice pursuant to art. VI, § 6, of the Cal. Const.)  Affirmed.

Mark Alan Hart, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Scott C. Taylor, and Sabrina Y. Lane-Erwin, Deputy Attorneys General, for Plaintiff and Respondent.

1

I

INTRODUCTION

Defendant Noe Ivan Cortes sexually molested his biological daughter, Jane Doe, for four years, beginning when she was 14 years old. A jury convicted him of seven counts of lewd and lascivious acts (Pen. Code, § 288, subd. (c)(1))[1] and four counts of rape. (§ 261, subd. (a)(2).) The court sentenced him to a total term of 40 years eight months in prison.

On appeal, defendant asserts "[t]he rulings of the trial court impaired the ability of the defense to challenge the credibility of the complaining witness," contending that the investigating sheriff's detective acted inappropriately and Jane Doe recanted twice and lacked credibility. Defendant argues the trial court committed two types of evidentiary error, culminating in cumulative error. Defendant also requests this court conduct a *Pitchess*[2] review. We reject defendant's claims and affirm the judgment.

II

FACTUAL AND PROCEDURAL BACKGROUND

*A. Prosecution Evidence*

Jane Doe was born in 1993 and was 19 years old when she testified in 2013. Defendant is married with three biological children. Jane Doe is his fourth biological

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

[2] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

child from an extramarital relationship. When she was 11 years old, Jane Doe began living with defendant, his wife, and their three children.

When Jane was 14 years old, defendant touched her breasts about 30 times. The first time he disciplined her by telling her to sit on his lap. He called her "his baby" and said it was okay. She objected when defendant tried to touch her breasts under her shirt but over her bra. Once defendant tried to look at Jane Doe when she was in the shower. Jane Doe confided in her half-sister, who called her a liar and told her not to say anything again. Jane Doe was afraid to tell other family members.

When Jane Doe was a high school sophomore or junior, defendant commented that her body was becoming more womanly. He started to grab and touch her. He told Jane Doe she should not feel uncomfortable about what he was doing because she was his daughter. She refused his offer of money to view her breasts. He called her objections foolish.

In October or November 2010, during Jane Doe's senior year of high school when she was 17, he began taking her to his machine shop in Jurupa on Saturdays to help clean the shop. He asked her how much money she wanted to relinquish her virginity and he told her no one would appreciate the experience as much as he would. She refused and felt angry, scared, and sick. He tried to reassure her by telling her there was nothing wrong and he would not hurt her but she started to cry. In the back seat of a car, he took off her pants and underwear against her will. She continued to cry and asked him to stop. He told her to pretend it was not happening. He inserted his penis from behind her while

3

she was on her hands and knees. She kept crying and "kind of blacked out." Afterwards, he told her to get dressed and sweep the machine shop. He commented, "no one would appreciate it the way he did and he was so thankful."

The same style of sexual intercourse continued every weekend until May 2011. Defendant said he used condoms but he also made her take pills and a pregnancy test after unprotected sex. Jane Doe thought the sex occurred about eight to 10 times. Defendant gave her money for working in the machine shop.

Defendant confessed to her "he knew it was wrong and that he was sick, that he needed help, and that he would stop, and he would apologize." He blamed Jane Doe's changing body and tight clothes. He told her to relax and to pretend to enjoy it and that he was someone else. He said no one had to know. He told her it would hurt Jane Doe's mother if she found out and she would not believe her. He also said the family would separate from Jane Doe. The sex ended shortly before she graduated in June 2011.

Jane Doe was embarrassed to tell anyone about the incidents. She was scared and felt she should have stopped defendant. She hated what was happening and resented defendant.

Jane Doe started being more rebellious at school and home and to fight with defendant more often. In April, she stole defendant's money because she was angry. She was placed on restriction in her room, lost her cell phone, and was not allowed to attend the prom. She moved out of the house in June 2011, about a week after she graduated. Defendant promised he would get help and tell everyone what happened if she came

4

home.

Although her friend, J.C., wanted to date Jane Doe, she did not want a relationship because of what had happened. Jane Doe told J.C. she was sexually abused by defendant. She did not tell J.C. they had had sexual intercourse. J.C. thought the abuse meant touching.

Finally, after Jane Doe told her grandmother, her aunt convinced Jane Doe to contact legal authorities. Assisted by deputy sheriffs, Jane Doe made a pretext phone call to defendant. During the pretext conversation, Jane Doe told defendant she had not had her period in about three months. Defendant said he had used a condom. He said he would buy her a pregnancy test but he did not ejaculate inside her. He said he did not have an STD. He did not want to talk on the telephone.

In the fall of 2011, Jane Doe wrote a letter recanting her accusations that defendant had raped her. Her stepmother and her half-sister had begun talking to her again. Her stepmother was sad and asked Jane Doe not to leave the family without a father. However, in court, Jane Doe testified she wrote the false letter because she wanted to help her family but her testimony was the truth. Her testimony was consistent with an interview with Detective Phillip Rice, in which she reported defendant had molested and raped her.

B. *Defense Evidence*

Defendant's wife testified Jane Doe took $11,000 from defendant. She was punished for having stolen the money and this made her angry and upset. She left home

5

the month after she graduated from high school. Her stepmother kept in contact with her and did not refuse to talk to Jane Doe even after she complained to the police. Defendant's wife testified that she never noticed anything out of the ordinary between defendant and Jane Doe. Defendant was a good father. Her opinion of defendant would not change if she learned defendant had sexual intercourse with Jane Doe.

Defendant's cousin testified that she always trusted defendant with her children. Her opinion of defendant would not change if she learned defendant had sexual intercourse with Jane Doe.

Defendant's cousin's son testified he spent a great deal of time during his childhood with defendant, and never noticed any inappropriate behavior. His opinion of defendant would not change if he learned defendant had sexual intercourse with Jane Doe.

Before Jane Doe wrote the letter recanting her rape allegations, she met with a defense investigator at defendant's residence for more than two hours and said that she had lied to the police about defendant having raped her. Jane Doe told the defense investigator she was upset with defendant because he caught her escaping out the window and because she stole $11,000. She was afraid of being disciplined. Jane Doe expressed concern for defendant but also worried that she would be in trouble for recanting. Jane Doe first agreed to a subsequent interview but, instead, gave the letter to her stepmother.

Jane Doe's half-sister testified that she never observed anything unusual about Jane Doe or about defendant's conduct toward Jane Doe. She claimed Jane Doe was

6

dishonest and often got into trouble at home.

The owner of the business next door to defendant's machine shop, testified that he first saw Jane Doe two weeks before Mother's Day in 2011. He also testified that the machine shop doors normally remained open.

## III

## *PITCHESS* REVIEW

The parties both agree this court should review the sealed transcript of the in camera *Pitchess* hearing to determine if the trial court properly decided the motion. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1232.) After conducting a review of police personnel records pursuant to a *Pitchess* motion, the trial court should exclude any information that has no relevance and any relevant information that: (1) occurred more than five years before the event at issue in the trial; (2) represents a conclusion of an officer investigating a complaint pursuant to section 832.5; or (3) is so remote that its disclosure would be of little or no benefit. (Evid. Code, § 1045, subd. (b).)

An appellate court reviews a trial court's ruling on the discovery of relevant evidence in a police officer's personnel files for abuse of discretion. (*People v. Jackson* (1996) 13 Cal.4th 1164, 1220-1221.) After examining the subject personnel records, we determine there was no abuse of discretion.

## IV

## DUE PROCESS

Defendant contends the trial court denied him the constitutional right to present a

defense when it prohibited evidence to show that the lead investigator, Detective Rice, pursued an inappropriate relationship with Jane Doe in order to encourage Jane Doe to reverse her recantation. Initially, defendant did not object that the trial court prevented him from presenting a defense in violation of his constitutional rights. Thus, his constitutional objection has been forfeited. (*People v. Smithey* (1999) 20 Cal.4th 936, 995.) Even assuming there was no forfeiture, defendant's claim fails on the merits because the evidence was speculative and irrelevant. Furthermore any error was harmless. An appellate court applies the abuse of discretion standard of review to a trial court's ruling on the admissibility of evidence. (Evid. Code, § 352; *People v. Harrison* (2005) 35 Ca1.4th 208, 230; *People v. Waidla* (2000) 22 Cal.4th 690, 723-724.)

At trial, defense counsel made an offer of proof that Detective Rice took Jane Doe to the gym, and afterwards texted her that her buttocks were sexy and she looked good when she sweated. He also allegedly texted Jane Doe a photograph of himself wearing only shorts and bought her a cell phone calling card. Defense counsel represented that Detective Rice was investigated for these improprieties and resigned. Defendant's theory was that Jane Doe lied initially and then told the truth when she recanted. Detective Rice convinced her to lie again so defendant would be convicted and they could have a relationship, which was also why Detective Rice did not investigate Jane Doe's theft of cash from defendant.

The trial court refused to admit the evidence about Rice, finding no hypothetical or actual showing that Rice influenced Jane Doe to report defendant's crimes or to

8

participate in the pretext call.  The court found the proffered evidence was a "classic red herring."  Although Rice behaved inappropriately, the court found there was no showing that Rice solicited or caused evidence to be manufactured or fabricated.

Evidence Code section 352 provides:  "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  Where the inference to be drawn from the evidence at issue is speculative or factually unfounded, defendant has not been deprived of the due process right to present all relevant evidence of significant probative value.  (*People v. Babbitt* (1988) 45 Cal.3d 660, 684; *People v. Cunningham* (2001) 25 Cal.4th 926, 998-999.)  Indeed, evidence that leads only to speculative inferences is irrelevant.  (*People v. Morrison* (2004) 34 Cal.4th 698, 711.)

Here, the trial court properly concluded that Rice's behavior in pursuing a personal relationship with Jane Doe was not relevant evidence that Rice had solicited Jane Doe to report defendant's crimes and to participate in an interview or that Rice tricked defendant into admitting the crimes during the pretext call.  There was also nothing more than speculation that Rice's gym visits with Jane Doe and his texts to her caused her to reverse her recantation and to testify truthfully at trial.  Accordingly, the trial court did not abuse its discretion.

In any event, any error was harmless.  The "routine application of state evidentiary law does not implicate defendant's constitutional rights."  (*People v. Brown* (2003) 31

Cal.4th 518, 545.) Defendant was not prevented from presenting his defense. (See *People v. Smithey, supra*, 20 Cal.4th at p. 996.) The prosecution case was overwhelming, based on Jane Doe's detailed recitation of the events and defendant's inculpatory admissions in the pretext call, in which he confessed that he molested and raped his daughter. Any error was harmless under the "reasonable probability" standard of *People v. Watson* (1956) 46 Cal.2d 818, 836, or the "beyond a reasonable doubt" standard of *Chapman v. California* (1967) 386 U.S. 18, 24.

V

THE VICTIM'S SEXUAL HISTORY

The trial court also refused to allow testimony from Jane Doe's half-sister that Jane Doe had sexual relations with her friend, J.C. Again, defendant's constitutional claim was forfeited. (*People v. Smithey, supra*, 20 Cal.4th at p. 995.) Moreover, the claim lacks merit because the evidence was legally irrelevant. Furthermore, any error was harmless.

Jane Doe testified she did not want to date J.C. because of defendant's conduct. During cross-examination, she denied she ever had an intimate relationship with J.C. Jane Doe's half-sister testified that Jane Doe and J.C. had sex together. Outside the jury's presence, the trial court admonished defense counsel for violating the rape shield law. Defense counsel explained she was trying to impeach Jane Doe with an inconsistent statement under Evidence Code section 780, subdivision (f), not by bringing up her sexual history. The prosecutor proposed the court strike the testimony and admonish the

10

jury. The court commented that the evidence was irrelevant. The court struck the half-sister's statement and admonished the jury to disregard it.

Evidence of the sexual conduct of a complaining witness may be admissible when "offered to attack the credibility of the complaining witness" and when presented in accordance with the strict procedures under Evidence Code section 782, including a hearing outside of the presence of the jury. (*People v. Fontana* (2010) 49 Cal.4th 351, 362.) Evidence Code section 782 is designed to protect victims of molestation from "embarrassing personal disclosures" unless the defense is able to show in advance that the victim's sexual conduct is relevant to the victim's credibility. (*People v. Bautista* (2008) 163 Cal.App.4th 762, 782; *People v. Chandler* (1997) 56 Cal.App.4th 703, 708.) Great care must be taken to insure that section 782 does not allow admitting otherwise inadmissible evidence. (*People v. Rioz* (1984) 161 Cal.App.3d 905, 918-919.)

Defendant did not comply with Evidence Code section 782 in the manner required by law. The trial court also expressly noted the evidence was irrelevant. The court was not required to explain in greater detail its decision to exclude the evidence. The court was well aware of the evidence presented, including Jane Doe's testimony, and exercised its discretion to prohibit evidence that she said she had sex with J.C. Defendant cannot establish an abuse of discretion.

Furthermore, as impeachment evidence it was significantly outweighed by its substantial inflammatory nature and the privacy interests protected by the rape shield law. This case did not depend largely on Jane's credibility. Defendant's telephone admissions

11

about having sex with his daughter substantially corroborated Jane Doe's testimony. The exclusion of such evidence was harmless under any standard, for the same reasons there was no error. The prosecution case was overwhelming. Defendant's admissions in the pretext call were unchallenged. (*People v. Watson, supra*, 46 Cal.2d at p. 836; *Chapman v. California, supra*, 386 U.S. at p. 24.)

Finally, there was no ineffective assistance of counsel because defendant cannot establish his counsel's representation fell below an objective standard of reasonableness and there was a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different. (*Strickland v. Washington* (1984) 466 U.S. 668, 686-687; *People v. Williams* (1997) 16 Cal.4th 153, 215.) Based on this record, defendant cannot establish deficient performance or prejudice because the trial court found the evidence was irrelevant and thus inadmissible.

VI

DISPOSITION

There was no evidentiary error and no cumulative error. We affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

HOLLENHORST
Acting P. J.


RICHLI
J.

12